UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS LYONS,

        Plaintiff,                                 Hon. Paul L. Maloney

v.                                             Case No. 1:07-CV-405

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age at the time of the ALJ's decision. (Tr. 20, 67). He completed the ninth grade and worked previously as a dishwasher and prep cook. (Tr. 18, 104-07, 502).

Plaintiff applied for benefits on October 29, 2003, alleging that he had been disabled since September 20, 2002, due to a learning disability and "back problems." (Tr. 67-69, 152). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 21-54). On June 22, 2006, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 496-521). In a written decision dated December 27, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 13-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

In December 1993, Plaintiff participated in testing, the results of which revealed that he possesses a verbal IQ of 66, a performance IQ of 68, and a full-scale IQ of 66. (Tr. 240).

On September 27, 2001, Plaintiff participated in a consultive examination conducted by Dr. Thomas Keaveney. (Tr. 207-13). Plaintiff reported that he was disabled due to "back problems." (Tr. 207). Plaintiff reported that he had not received treatment for his back pain "since 1999." (Tr. 207). An examination of Plaintiff's lumbar spine revealed tenderness and minimally reduced range of motion. (Tr. 208, 212). Straight leg raising was negative and Plaintiff walked with a "normal" gait. (Tr. 208). Plaintiff exhibited normal motor and sensory function and the doctor discerned no evidence of radiculopathy. (Tr. 208). The doctor diagnosed Plaintiff with back pain and recommended that he participate in "a more vigorous course of physical therapy." (Tr. 208).

On October 27, 2001, Rom Kriauciunas, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 222-35). Taking note of Plaintiff's low IQ scores, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.05 (Mental Retardation) of the Listing of Impairments. (Tr. 223-31). The doctor also found, however, that Plaintiff did not suffer from "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." (Tr. 226).

Dr. Kriauciunas determined that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 232). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 232). The doctor also noted that Plaintiff has a history of substance abuse. (Tr. 230).

Dr. Kriauciunas also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and

4

memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 236-38). Plaintiff's abilities were characterized as "moderately limited" in five categories. (Tr. 236-38). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 236-38). The doctor concluded that Plaintiff was "able to do unskilled work" and was "able to do simple tasks on a sustained basis." (Tr. 238).

On September 21, 2002, Plaintiff injured his right foot after jumping from a second-story window. (Tr. 242-48). X-rays of Plaintiff's right ankle revealed a "fracture through a tiny plantar calcaneal spur" without "extension to the calcaneus." (Tr. 248). There was no evidence, however, that Plaintiff's ankle mortise had been displaced. (Tr. 248).

On October 23, 2002, Plaintiff reported to the emergency room after suffering a laceration to his left index finger. (Tr. 251-57). The doctor reported that Plaintiff smelled of alcohol. (Tr. 253). Plaintiff also reported that he "does crack cocaine." (Tr. 253). X-rays of Plaintiff's hand revealed no evidence of fracture or abnormality. (Tr. 255). Plaintiff received three sutures in his finger. (Tr. 257).

On December 2, 2003, Dr. Brian Krause completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 274-87). Noting Plaintiff's low IQ scores, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.05 (Mental Retardation) of the Listing of Impairments. (Tr. 275-83). The doctor also found, however, that Plaintiff did not suffer from "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." (Tr. 278).

Dr. Krause determined that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 284). Specifically, the doctor concluded that Plaintiff experienced mild

restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 284).

Dr. Krause also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 288-90). Plaintiff's abilities were characterized as "moderately limited" in eight categories. (Tr. 288-89). With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 288-89). The doctor concluded that Plaintiff was capable of performing "simple" and "unskilled" work. (Tr. 286, 290).

On January 7, 2004, Plaintiff participated in a consultive examination conducted by Dr. H. D. Jones. (Tr. 293-302). Plaintiff reported that he was disabled due to a fractured right heel, back pain, and a learning disability. (Tr. 293). He acknowledged that he drinks alcohol "every day, whenever and whatever he can get." (Tr. 294). Plaintiff also admitted that he "is presently using cocaine and marijuana." (Tr. 294). Plaintiff reported that he experiences no difficulties performing activities of daily living and is able to walk and ride his bicycle without difficulty. (Tr. 294).

Plaintiff exhibited a "nonantalgic gait" and was able to get on and off the examination table without difficulty. (Tr. 295). An examination of Plaintiff's right foot revealed no evidence of "swelling or pinpoint tenderness." (Tr. 295). Plaintiff exhibited "normal" range of motion "of all joints including neck, back, shoulders, elbows, wrists, hands, hips, knees, ankles and feet." (Tr. 295). A neurological examination revealed no evidence of "overt motor, sensory or cerebellar

abnormality." (Tr. 295). X-rays of Plaintiff's lumbar spine revealed "degenerative changes," but no evidence of abnormality. (Tr. 297).

At the administrative hearing, Plaintiff was asked what "physical problems" prevented him from working full time, to which Plaintiff stated:

> Just a lot of heavy lifting and my back will lock up on me. That's basically about it. And my foot bothers me.

(Tr. 506).

Plaintiff testified that the pain in his foot constantly ranges from 7-10 (on a scale of 1-10). (Tr. 507-08). Plaintiff further testified, however, that he can walk approximately one mile, stand for four hours, sit for eight hours, and lift 100 pounds. (Tr. 509-10). Plaintiff also testified that "probably three days a week" he mows lawns to earn money. (Tr. 505).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) post-broken right heel, (2) learning disability, (3) polysubstance abuse, and (4) low back pain. (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-17). The ALJ concluded that while Plaintiff was unable to perform any of his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff experiences the following physical limitations: (1) he can occasionally lift/carry 20 pounds, (2) he can frequently lift/carry 10 pounds, (3) he cannot climb ladders, ropes, or scaffolds, and (4) he can only occasionally kneel, crawl, crouch, bend, or twist. (Tr. 17). As for Plaintiff's non-exertional limitations, the ALJ found that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 16-17). The ALJ further found that Plaintiff reads at a third grade level. (Tr. 17).

Accordingly, the ALJ concluded that Plaintiff retained the capacity to perform work activities consistent with the aforementioned physical limitations and further subject to the following restrictions: (1) he can perform only simple unskilled work, (2) he can maintain only minimal contact with co-workers and the general public, (3) he can perform only low-stress work that does not involve meeting production quotas or goals or keeping pace with other co-workers. (Tr. 17). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed approximately 12,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 519-20). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. Plaintiff does not meet the requirements of section 12.05 of the Listing of Impairments

Plaintiff asserts that he is entitled to disability benefits because he satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The ALJ found that Plaintiff's impairments did not meet the requirements of this (or any other) listing.

Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>    1. Marked restriction of activities of daily living; or

>   2.  Marked difficulties in maintaining social functioning; or
>
>   3.  Marked difficulties in maintaining concentration, persistence or pace; or
>
>   4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2006).

Specifically, Plaintiff asserts that he satisfies section 12.05(C). As noted above, testing revealed that Plaintiff possesses a verbal IQ of 66, a performance IQ of 68, and a full-scale IQ of 66. That this test was not administered until after Plaintiff attained the age of 22 is of no consequence. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (in analyzing a claim under section 12.05, the court concluded that "absent evidence of sudden trauma that can cause retardation," IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life). Moreover, Plaintiff suffers from a physical impairment which imposes additional and significant work-related limitations, as evidence by the ALJ's RFC determination.

While Plaintiff satisfies the criteria articulated in subsection (C), he must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also*,

*Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The record contains no direct evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime after age 22. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was mentally retarded or satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. Moreover, on two separate occasions an "enhanced examiner" with the Social Security Administration has determined that Plaintiff does not suffer from mental retardation, but instead suffers from borderline intellectual functioning. (Tr. 22, 25). This conclusion enjoys substantial support in the record. As the Sixth Circuit has observed, a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of mental retardation and, therefore, precludes a finding that the requirements of Section 12.05 have been met. *See Cooper*, 217 Fed. Appx. at 451.

Plaintiff's behavior and activities likewise fail to support Plaintiff's argument that he satisfies Section 12.05. Aside from a period of incarceration from approximately 1993-1998, (Tr. 509-10), Plaintiff has maintained employment throughout much of his adult life. (Tr. 104-07, 174-77, 196, 505). Plaintiff has also reported engaging in a wide range of activities inconsistent with the conclusion that he is mentally retarded. (Tr. 116-21, 511-15). Such facts indicate that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Freeman v. Apfel*,

208 F.3d 687, 692 (8th Cir. 2000) (claimant with a 10th grade education, who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment); *see also*, *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior").

As articulated herein, therefore, the Court concludes that Plaintiff has not presented evidence from which it can reasonably be determined that he met the diagnostic definition of mental retardation prior to age 22 (or at anytime thereafter). Thus, Plaintiff has not met his burden of demonstrating that he satisfies the requirements of section 12.05 of the Listing of Impairments. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002) (the burden rests with the claimant to establish that she meets a listed impairment).

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                                    Respectfully submitted,

Date:  July 29, 2008                                               /s/ Ellen S. Carmody
                                                                   ELLEN S. CARMODY
                                                                   United States Magistrate Judge