UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CURTIS LYONS,                                    | Case No. 1:07-cv-405

    Plaintiff,                               | HONORABLE PAUL L. MALONEY

    v.                                             | Magistrate Judge Carmody

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

### Order Overruling the Plaintiff's Objections and Adopting the R&R; Affirming the Commissioner's Denial of Disability Insurance Benefits; Terminating the Case

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, for a Report and Recommendation ("R&R").

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." *See also* W.D. MICH. LCIVR 72.3(b). The Magistrate Judge issued the R&R on Tuesday, July 29, 2008, and Lyons filed objections on Monday, August 11, 2008. Calculating the ten-day period as

prescribed by FED. R. CIV. P. 6(a), the court finds that Lyons' objections were timely. The Commissioner timely filed a response to the objections on August 25, 2008.[1]

The objections are poorly expressed and at times unclear. The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objections. For the reasons explained by the R&R, substantial evidence supported the ALJ's determination that Lyons' severe impairments – a learning disability and low intelligence quotient ("IQ"), post-break right heel condition, and lower-back pain – did not render him disabled between his alleged disability onset date (September 20, 2002) and his date last insured.

Lyons' objections do not challenge the portion of the R&R pertaining to his back or heel problems. Rather, Lyons challenges the determination that he is not mentally retarded, and disputes the suggestion that his prior work precludes a finding of disability.

Lyons' first objection states, in its entirety:

> The Magistrate states that the claimant is not diagnosed as having mental retardation, because he does not have "deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22." The magistrate further state's [sic] that there is no direct evidence to support such deficiencies in adaptive behavior. This is incorrect. The claimant[']s IQ levels fall within that contemplated by listing 12.05. There has in fact been direct evidence of deficiencies in adaptive functioning prior to age 22.

As noted in the [ALJ]'s opinion, the claimant was tested in December of 1993,

---

[1] Under W.D. MICH. LCIVR 72.3(b), the Commissioner had fourteen days from service of the objections to file a response thereto. Under FED. R. CIV. P. 6, the fourteen days began on the day after the Commissioner was electronically served with the objections (Monday, August 11), i.e., Tuesday, August 12. Because the period is longer than ten days, FED. R. CIV. P. 6 directs the court to include weekends and holidays. The fourteenth day was Monday, August 25, and the Commissioner filed its response on that date.

> obtaining a verbal IQ score of 66, a performance IQ score of 68, and a full IQ score of 66. Although there are limited documents available from his education in the Lansing School District, the documents do confirm that the claimant had special education classes throughout his education to the ninth grade, and had significant difficulties with intellectual functioning. Specifically the reference to EMI, [which] is an abbreviation commonly used for Educable Mentally Impaired (TR 191).
>
> The [ALJ] acknowledges that prior testing determined low IQ scores. And the documentation establishes that testing on December 1993 indicated a verbal IQ of 66[,] a performance IQ of 68 and a full scale IQ of 66 (TR 24-241).
>
> The claimant testified that he [had] limited education, having only completed the 9th grade. That education was specifically noted to be special education all his life, with a need for additional assistance tutoring. All of his classes were special education classes. (TR 502).
>
> The Sixth Circuit has specifically held that such evidence is sufficient to support a finding of deficiencies in adaptive functioning. Supra. [There is no case law earlier in the objection document.] The filure [sic] to require the Commissioner to consider this evidence, previously ignored, is error.

Objection at 1. Section 12.05 of the Listing of Impairments lists numerous alternative criteria which can qualify a claimant as mentally retarded. Lyons contends that he is mentally retarded under section 12.05C, which states,

> 12.05   Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
>                                  * * *
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>                                  * * *

20 C.F.R. Part 404, Subpart P, App. 1, § 12.05.

Lyons had valid verbal, performance, and full-scale IQ scores in the 60s. Even though the tests that resulted in these scores were administered after Lyons reached age 22, the Magistrate Judge correctly noted that "absent evidence of sudden trauma that can cause retardation," the courts follow a rebuttable presumption that a claimant's IQ remains fairly constant throughout his life. *See* R&R at 12 (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001)). A Sixth Circuit panel endorsed this reasoning in *McPeek v. HHS*, 1994 WL 56929, 19 F.3d 19 (6th Cir. Feb. 24, 1994) (Martin, Batchelder, D.J. Thomas G. Hull) (unreported table decision), stating:

> No evidence suggests that McPeek's level of intellectual functioning has declined since she was twenty-two. In fact, the Secretary's own medical expert opined:
>
>> It would be unusual to assume that her intellectual ability would have changed much as a young adult compared to what it would have been when she was younger than 22 years. It is generally believed that an individual's mental ability or intellect remains rather similar unless one undergoes some brain or neurological trauma or due to the aging process or disease. These latter matters do not seem to usually manifest themselves until we begin to reach age 50-60 or older. The claimant is well below these years and I see nothing in the record to suggest brain damage or dysfunction.

*Id.* at *2.

In other words, absent evidence that Lyons' IQ may have changed after age 22, the fact that Lyons had IQ scores in the 60s after age 22 leads to the conclusion that his IQ *before* age 22 was in the 60s as well. *See, e.g., Pearson v. Comm'r of Soc. Sec.*, 2008 WL 2325617, *2-3 and *6 (W.D. Mich. May 19, 2008) (Carmody, U.S.M.J.) (IQ tests administered at age 49-50 were competent evidence as to claimant's IQ before age 22) (citing *Hodges*, 276 F.3d at 1268-69); *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007); *contrast Bilka v. Comm'r of Soc. Sec.*, 252 F. Supp.2d 472, 474 (N.D. Ohio 2002) (Baughman, U.S.M.J.) (recommending holding that substantial evidence

4

supported the ALJ's determination that claimant's IQ during developmental period was outside the range required for a mental retardation listing; even though test at age 45 indicated IQ of 65, the presumption of constant IQ was rebutted by tests given before age 21, which showed an IQ above 70). The Magistrate Judge correctly applied this principle to hold that Lyons satisfied the IQ portion of section 12.05(C).[2]

The Magistrate Judge also reasonably determined the evidence supported a finding that Lyons "suffers from a physical impairment which imposes additional and significant work-related limitations, as evidence[d] by the ALJ's RFC determination", R&R at 12, which means that Lyons satisfies the other element of section 12.05(C).

The Magistrate Judge also correctly stated, however, that Lyons must meet not only the criteria in section 12.05(C), but also the requirements set forth in section 12.05's introductory paragraph. R&R at 12 (citing *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 451 (6th Cir.

---

[2]

If anything, the Magistrate Judge may have been charitable to Lyons by treating his IQ scores as valid. As the Commissioner pointed out in his initial brief,

> There is no copy of the actual test report relied upon by Plaintiff, no indication as to whether the test was administered by an appropriate professional, no mention as to whether the tester considered the test scores valid . . . . Significantly, December 1993 is concurrent with the start of Plaintiff's incarceration for dealing illegal drugs and the diagnosis of alcohol abuse by the prison psychiatrist (Tr. 388-89). Under those circumstances, Plaintiff's tests may not accurately reflect his intellectual functioning before age 22.

Comm'r Br. at 11 n.8. *See also* Comm'r Response to Objections at 4 n.1 ("Plaintiff at various times admitted to medical sources that he began drinking heavily at age 15, and subsequently took cocaine, marijuana, and IV heroin, and served numerous drug-related jail terms before December 1993.") (citing Tr. 294 & 388).

2007)). Namely, Lyons had to show that he experienced "significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested during the developmental period; i.e., . . . before age 22." Section 12.05 (emphasis added).

Lyons does not, and cannot, dispute the Magistrate Judge's observation that neither his medical providers nor any others in this case concluded that he satisfied the listing's definition of mental retardation, and that an SSA "enhanced examiner" twice determined that he suffers merely from "borderline" intellectual functioning rather than retardation. Indeed, Lyons himself acknowledges that "[a]t best, the claimant's prior history is borderline." Objection at 1.

As the Magistrate Judge stated, a diagnosis of borderline intellectual functioning is not equivalent to, or even consistent with mental retardation. R&R at 13 (citing *Cooper*, 217 F. App'x at 451). *See also* American Psychological Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. Text Revision 2000) ("DSM-IV-TR") at 41-43 (showing that borderline intellectual functioning and mental retardation are mutually exclusive diagnoses at different points along the same spectrum); *see, e.g., West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (C.J. Boggs, Batchelder, & Griffin) ("Dr. Dunn's evaluation revealed only borderline intellectual functioning and adjustment disorder, not mental retardation."); *Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 462 (6th Cir. 2007) (Rogers, Cook, U.S.D.J. Kathleen O'Malley) ("[T]he ALJ's conclusion that Potter's learning disability and *borderline intellectual functioning, while severe, did not meet or equal the listing for mental retardation* is supported by evidence in the record.") (emphasis added).[3][4]

---

[3]

*See, e.g., Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450 (6th Cir. 2007) (p.c.) (Martin, Batchelder & McKeague, JJ.) ("It is undisputed that no psychologist has diagnosed Cooper with

Moreover, Lyons presents no documentary evidence to rebut the Commissioner's statement that the record shows only one special-education class, *see* Comm'r Br. at 12, rather than Lyons' assertion that "[a]ll of his classes were special education classes", Objection at 2 (citing Tr. 502). Nor does Lyons deny that he was ranked #452 out of 610 students in his class. Nor can he now disclaim his earlier statement, to medical personnel, that he dropped out of high school after ninth grade due to disciplinary problems rather than a mental deficiency per se, *see* Tr. 186, 192 and 388.

Finally, Lyons does not rebut the finding that he maintained gainful employment throughout much of his adult life, excluding his 1993-1998 incarceration, *see* Tr. 92, 104-07, 137, 153, 174-77, 196, and 503-505 (Lyons had worked as fabric-material stretcher and fast-food worker, and at the time of the ALJ hearing, he was too busy working odd jobs to visit his son).

Consequently, Lyons has not shown any reversible error in the ALJ's decision, and has not undermined the Magistrate Judge's conclusion that despite Lyons' low IQ scores, he did not meet

---

mental retardation. The examiner and clinical psychologist who tested him diagnosed him *instead as borderline intellectual functioning*.");

*Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2004) ("The conclusions of Dr. Spence that Kamea was operating within the borderline range of intelligent functioning, *rather than being mentally retarded*, are supported by the testimony . . . .") (emphasis added);

*Hunt v. Comm'r of Soc. Sec.*, 2008 WL 2095258, *5-6 (E.D. Mich. May 16, 2008) (Virginia Morgan, U.S.M.J.) (diagnosis of borderline intellectual function was inconsistent with mental retardation); *Wilder v. Comm'r of Soc.*, 2008 WL 650574, *5-6 (E.D. Tenn. Mar. 5, 2008) (Thomas Varlan, J.) (same);

4

*Accord Cox v. Astrue*, 495 F.3d 614, 617, 618 (8th Cir. 2007) *(agreeing with appellant that medical report would contradict itself if it stated both that claimant was mildly retarded and that she had borderline intellectual functioning*, but concluding that report's "remark indicating a contrary diagnosis of mild mental retardation was the result of inadvertence or imprecision").

the section 12.05(C) listing for mental retardation in light of his employment history and regular activities. *See, e.g., Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) ("The record supports the finding . . . that the required limitations to adaptive functioning were not present, despite Garrett's low IQ score. Garrett is able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars. Garrett's daily activities include church attendance, television, card playing, and walking in the mall. Garrett also testified that, with orientation and instruction, he believed he could return to a job as a stock assistant."); *Burt v. Barnhart*, 151 F. App'x 817, 820 (11th Cir. 2005) ("Despite the presumption that attaches based on a valid IQ, even 'a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.'") (quoting *Lowery v. Sullivan*, 979 F.2d 825, 837 (11th Cir. 1992)).

For these reasons, the court agrees with the Magistrate Judge that substantial evidence supported the ALJ's denial of benefits. Nor has Lyons shown any reversible error in the ALJ's opinion explaining his decision. There is no need to remand to the agency for reconsideration of the record, or for an explicit discussion of whether the evidence meets or equals the mental retardation listing in section 12.05(C). Even if the ALJ's articulation of his reasoning was less than ideal, remanding here for an opinion that more fully recites the ALJ's consideration of every issue "'would be an idle and useless formality.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (courts are not required to "convert judicial review of agency action into a ping-pong game")). "'No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand would lead to a different result.'" *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x

171, 173 (6th Cir. 2004) (Moore, Sutton, D.J. John Adams) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

There is no reason to believe that remand would lead to a different result.  *Cf. Kidd v. Comm'r of Soc. Sec.*, 7 F. App'x 483 (6th Cir. 2001) (affirming district court's holding that substantial evidence supported ALJ's determination that claimant did not meet or equal the Listing for mental retardation, and the district court's determination that remand to the Commissioner was unnecessary).[5]

**ORDER**

Accordingly, having reviewed the complaint, the parties' briefs, the R&R, and the plaintiff's objections to the R&R, the court hereby **OVERRULES** the plaintiff's objections.

The R&R is **ADOPTED**, and the Commissioner's decision is **AFFIRMED**.

This case is **TERMINATED.**

---

[5]
The panel there stated,

> Kidd argues for remand because the ALJ . . . while finding that Kidd has no impairments which when considered in combination would equal an applicable listing, did not discuss the basis for this finding in his opinion other than in a conclusory fashion. * * * Listing 12.05(C) requires an IQ between 60 and 70 and a severe impairment to merit a finding of disability. Kidd has an IQ of 75 and one severe impairment.  If she could demonstrate that she had additional severe impairments . . . in order to counterbalance her higher IQ, remand may have been appropriate to determine medical equivalence [of her condition to mental retardation].  *However, because* she doesn't have additional impairments which could offset the higher IQ and *substantial evidence supports the ALJ's determination of a lack of medical equivalence, remand is unnecessary* and inappropriate.

*Kidd*, 7 F. App'x at 490-91.(emphasis added).

This is a final and appealable order.[6]

**IT IS SO ORDERED this 27th day of August 2008.**

                                                                   /s/ Paul L. Maloney
                                                                   Paul L. Maloney
                                                                   Chief United States District Judge

---

[6] If Lyons appeals, it is "not clear" whether this court's decision not to remand would be reviewed *de novo* or merely for abuse of discretion. *See Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 464 (6th Cir.) (p.c.) (Guy, Suhrheinrich, & Griffin, JJ.) (contrasting *Perkins v. Apfel*, 14 F. App'x 593 (6th Cir. 2001) with *Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852 (6th Cir. 2003)), *cert. denied*, – U.S. –, 128 S.Ct. 354 (2007).